**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

TED HAMILTON                                                                                           PLAINTIFF

v.                                         4:16CV00243-BSM-JJV

MELANIE JONES FOSTER,
Physician, Wrightsville Unit, ADC; *et al.*                                              DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to Chief United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2.       Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.       The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

## I.     INTRODUCTION

Ted Hamilton ("Plaintiff") brings this action *pro se* and under 42 U.S.C. § 1983. (Doc. Nos. 2, 7.) He alleges Defendant Melanie Jones Foster, a physician at the Wrightsville Unit of the Arkansas Department of Correction ("ADC"), was deliberately indifferent to his serious medical need during his incarceration there.[1] (Doc. No. 2 at 4.) Defendant Jones Foster has filed a Motion for Summary Judgment, contending she is entitled to judgment as a matter of law on Plaintiff's claims. (Doc. No. 46.) Plaintiff has not responded, and this matter is now ripe for a decision. After careful review, and for the following reasons, I find the Motion for Summary Judgment should be GRANTED.

---

[1] Defendant Rory L. Griffin was previously dismissed. (Doc. Nos. 4, 6.)

## II.     FACTS

According to Plaintiff's Complaint, he injured his left hand and thumb in a fall on March 26, 2012, while he was detained at the Hempstead County Detention Facility. (Doc. No. 2 at 12.)  Following an emergency room visit and x-rays, Plaintiff was diagnosed with a sprain and prescribed pain medication and an ace bandage. (*Id*. at 12, 16-21; Doc. No. 47-3 at 3.)  On April 19, 2012, Plaintiff was seen by an outside orthopedic surgeon for continued complaints of pain in his thumb. (Doc. No. 2 at 12, 23.)  The orthopedic surgeon diagnosed Plaintiff with a "thumb capsular and radial collateral ligament tear" and recommended surgery. (*Id*. at 12, 24.)  Plaintiff was released from the Hempstead County facility on April 30, 2012, and did not have the surgery. (Doc. No. 47 at 1.)

Plaintiff was admitted to the custody of the Ouachita River Correctional Unit of the ADC on October 16, 2012, and began seeking treatment for his thumb. (*Id*. at 1-2.)  An x-ray performed on the day of his admission was determined to be normal. (Doc. No. 2 at 13, 38.) On November 28, 2012, after Plaintiff had been transferred to the Cummins Unit, an in-house orthopedist, Charles Conrad Schock, noted Plaintiff's weakened grip and "an obvious raised deformity of the 1st MCP Joint of the Left Hand." (*Id*. at 13, 25-26.)  Dr. Schock noted Plaintiff had previously been recommended for surgery and started the process of requesting his outside medical records. (*Id*. at 25-26.)  Plaintiff was placed on "One Arm/Hand Duty" several times after that and given an ace wrap. (*Id*. at 26-30.)

Plaintiff was transferred to the Wrightsville Unit on April 29, 2013. (Doc. No. 47 at 2.)  He was first seen by Defendant Jones Foster on May 9, 2013, in sick call. (Doc. No. 2 at 36.)  In addition to complaining of a cough, Plaintiff also mentioned the pain in his left

thumb.  (*Id.*)  Defendant Jones Foster noted a mild deformity in his joint, but "no muscle wasting and still with good grip."  (*Id.*)  She noted there was no indication for surgery.  (*Id.*)  Following Plaintiff's continued complaints of pain and request to see an orthopedic specialist, Defendant Jones Foster saw Plaintiff again on June 27, 2013.  (Doc. No. 47-3 at 32-34.)  She noted Plaintiff had been seen previously for the same complaint and there was "no new injury or trauma."  (*Id.*)  Plaintiff refused to let Defendant Jones Foster examine or even touch his hand, saying she would make the pain worse.  (*Id.*)  When Plaintiff removed his ace bandage and Defendant Jones Foster was able to "briefly view" his hand, she noted it was without edema, inflammation, or muscle wasting.  (*Id.*)  She stated there was no indication at that point to refer him to an orthopedic surgeon and instead recommended "conservative therapy."  (*Id.*)

   Plaintiff returned to Defendant Jones Foster on July 10, 2013, and again refused to allow her to touch his hand.  (Doc. No. 47-3 at 35.)  By that point, Plaintiff's outside medical records had been obtained, and Defendant Jones Foster noted ligament repair had been recommended.  (*Id.*)  She found that because the injury was more than a year old and healing was complete, there was no indication for immediate surgery.  (*Id.*)  Still, Defendant Jones Foster referred Plaintiff to Dr. Schock and prescribed a pain medication.  (*Id.*)  Dr. Schock evaluated Plaintiff on August 9, 2013.  (*Id.* at 40.)  He recommended warm soaks and medication, stating, "I don't believe that any surg[ical] intervention would improve him."  (*Id.*)  Plaintiff expressed his disagreement with this assessment in subsequent medical requests and at sick call visits.  (*Id.* at 42-45, 51-56.)

4

Plaintiff was seen by Defendant Jones Foster several times thereafter, including on November 29, 2013, December 9, 2013, and January 23, 2014. (*Id*. at 59, 66, 72.) She ordered x-rays, which were determined to be normal. (*Id*. at 64.) Defendant Jones Foster continued to note Plaintiff's uncooperativeness with exams and continued to recommend conservative treatment, including pain medication. (*Id*. at 59, 66, 72.) She concluded there was "[n]o indication to refer for yet another medical opinion." (*Id*. at 72.) Another ADC provider, Dr. R. Floss, performed an orthopedic evaluation and also recommended conservative treatment. (*Id*. at 63.)

The basis of Plaintiff's Complaint is a visit with Defendant Jones Foster on March 3, 2014. (Doc. No. 2 at 4.) According to Plaintiff, Defendant Jones Foster told him she had seen him for this problem many times, she was not going to provide further treatment, and she was not going to again refer him to an orthopedic specialist for evaluation. (*Id*.) When Plaintiff asked why, Defendant Jones Foster told him to leave her office. (*Id*.) Plaintiff claims Defendant Jones Foster denied him "access to medical personnel qualified to exercise specialized medical expertise" to evaluate his condition. (*Id*.)

The record demonstrates Plaintiff did not seek further treatment for his thumb while in the Wrightsville Unit. (Doc. No. 47 at 4.) However, pursuant to an order in another case, he was evaluated by another outside orthopedic surgeon in June 2015. (Doc. No. 2 at 15.) This doctor noted "primary repair" of the ligament tear would be implausible three years after the injury and instead recommended fusion of the joint. (*Id*. at 80-81.) Plaintiff was transferred to the North Central Unit on March 3, 2016. (Doc. No. 47 at 2.) After

5

continued reports of pain and follow-up visits, Plaintiff underwent fusion surgery on June 10, 2016. (Doc. No. 47-3 at 105-06.)

### III.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or

that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## IV.   ANALYSIS

### A.   Official Capacity Claim

Plaintiff has sued Defendant Jones Foster in both her personal and official capacities. (Doc. No. 2 at 2.) He seeks only monetary damages.[2] (*Id*. at 6, Doc. No. 7 at 1-2.) Plaintiff's claim against Defendant Jones Foster in her official capacity is barred pursuant to the doctrine of sovereign immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office and, as such, is no different from a suit against the state itself, which is barred by the Eleventh Amendment unless the state has waived its immunity); *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991) (the State of Arkansas has not waived its Eleventh Amendment immunity). Accordingly, I recommend Plaintiff's official capacity claim against Defendant Jones Foster be dismissed.

### B.   Personal Capacity Claim

Defendant Jones Foster contends she is entitled to summary dismissal of Plaintiff's claim against her in her personal capacity because Plaintiff cannot show she was deliberately indifferent to his serious medical need. (Doc. No. 48 at 1.) The Eighth

---

[2] Although Plaintiff requested injunctive relief in his original Complaint, he suggests in his Amended Complaint such relief is no longer necessary. His Amended Complaint seeks only monetary damages. (Doc. Nos. 2 at 6; 7 at 1-2.)

Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). A prisoner advancing an Eighth Amendment claim based on medical care must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. *Id.* at 297. Deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed. *Id*. at 104-05. However, an inadvertent or negligent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain." *Id*. at 105.

Even assuming the injury to Plaintiff's thumb constituted a serious medical need, the record in this case simply does not demonstrate Defendant Jones Foster was deliberately indifferent to it. As recounted above, Defendant Jones Foster saw Plaintiff on multiple occasions during his incarceration at the Wrightsville Unit. She repeatedly examined his hand to the extent he allowed, prescribed pain medication, and ordered x-rays. Although Defendant Jones Foster found no indication for surgery, she referred Plaintiff to the in-house orthopedic specialist, Dr. Schock. Importantly, Dr. Schock concluded surgical intervention would not improve Plaintiff's condition.[3]

---

[3] Plaintiff sued Dr. Schock, alleging deliberate indifference to his serious medical need, in another case. *See Hamilton v. Schock*, Case No. 4:13CV00738-DPM. That action was dismissed without prejudice due to Plaintiff's failure to obtain service. (Doc. Nos. 13-15.)

The sole basis for Plaintiff's allegation of deliberate indifference is Defendant Jones Foster's March 3, 2014 refusal to again refer Plaintiff to a specialist. But the record clearly demonstrates Defendant Jones Foster was relying on Dr. Schock's prior evaluation and conclusion that no surgery was necessary. Defendant Jones Foster's notes from the March 3, 2014, visit explain her refusal to again refer Plaintiff:

> Pt c/o L hand pain; no changes since last visit. He was injured prior to incarceration, and has been to infirmary on multiple occasions c/o continued pain and disability. Please refer to multiple previous visits for further detail. He has been referred to Dr. Schock, who noted no need to consider surgical referral as exam essentially normal and pt does not have significant disability. XRAYs have been performed also, which are normal. Exam today normal also – he says "it looks ok today, but it did not heal correctly". He is requesting referral to outside surgeon.

(Doc. No. 47-3 at 79.) Defendant Jones Foster further explained, "I will not refer to orthopedic surgeon, as he has already had eval by our onsite orthopedist." (*Id.*) In short, Plaintiff had already been given the referral he was seeking, and that referral resulted in a conclusion that surgery was unnecessary. As there had been no change in Plaintiff's condition, Defendant Jones Foster was certainly entitled to rely on that previous referral and Dr. Schock's findings. To the extent Plaintiff alleges Defendant Jones Foster refused to provide him *any* treatment on March 3, 2014, the record demonstrates otherwise. She performed an examination, noting "no edema, no muscle loss, no inflammation, no joint deformities, grip is normal," and ordered continued pain medication. (*Id.*)

While Plaintiff clearly feels he needed more aggressive treatment, a showing of deliberate indifference requires more than mere disagreement with treatment decisions. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Moreover, Plaintiff cannot show

9

Defendant Jones Foster was deliberately indifferent for refusing to refer him to a surgeon by simply pointing out he was later recommended for surgery, more than a year later. Even assuming Dr. Schock's conclusion was incorrect at the time and Defendant Jones Foster was somehow negligent in relying on it, medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle*, 429 U.S. at 106. Finally, to the extent Plaintiff claims some harm resulting from a delay in providing surgery, he has not shown Defendant Jones Foster "ignored an acute or escalating situation involving a serious medical condition." *See Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990). Rather, she relied on a specialist's prior recommendation.

For these reasons, Defendant Jones Foster is entitled to summary dismissal of Plaintiff's claims against her in both her official and personal capacities.

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendant Jones Foster's Motion for Summary Judgment (Doc. No. 46) be GRANTED.

2. Plaintiff's cause of action be DISMISSED with prejudice.

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations would not be taken in good faith.

DATED this 19th day of June, 2017.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE